IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GGIS INSURANCE SERVICES, INC.** : | **CIVIL ACTION NO. 1:10-CV-1000** |
| **d/b/a GUARDIAN GENERAL** : | |
| **INSURANCE SERVICES,** : | **(Judge Conner)** |
|           **Plaintiff** : | |
| : | |
|       **v.** : | |
| : | |
| **LINCOLN GENERAL INSURANCE** : | |
| **COMPANY, SCOTT BUTLER,** : | |
| **KINGSWAY FINANCIAL SERVICES,** : | |
| **INC., and DOES 1-100,** : | |
| : | |
|           **Defendants** : | |

## MEMORANDUM

GGIS Insurance Services, Inc. ("GGIS") brings this diversity action against Lincoln General Insurance Company ("Lincoln"), Scott Butler ("Butler"), Kingsway Financial ("Kingsway"), and Does 1 through 100. GGIS asserts claims of breach of contract, breach of implied covenant of good faith and fair dealing, statutory unfair competition, common law unfair competition, promissory fraud, fraud and deceit, negligent misrepresentation, and negligent claims handling. Presently before the court are two motions for summary judgment, one filed by Lincoln (Doc. 83), and the other filed by Butler and Kingsway (Doc. 80). For the reasons that follow, the motions will be granted and Does 1 through 100 will be dismissed.

**I.   Background**[1]

   **A.   The Parties and the Contract**[2]

GGIS is a California corporation with its principal place of business in Burbank, California.  (Doc. 85 ¶ 1; Doc. 102 ¶ 1).  Lincoln is a corporation with its principal place of business in York, Pennsylvania.  (Doc. 85 ¶ 2; Doc. 102 ¶ 2).  Butler, a resident of Illinois, was Vice President of Lincoln during all times relevant to this action.  (Doc. 81 ¶¶ 1, 2; Doc. 98 ¶¶ 1, 2).  Kingsway is a Canadian holding company with its principal place of business in Ontario, Canada.  (Doc. 81 ¶ 3; Doc. 98 ¶ 3).  Kingsway owned Lincoln as an indirect, wholly-owned subsidiary during the period described in the Complaint.  (Doc. 81 ¶ 4; Doc. 98 ¶ 4).

In April 2005, GGIS and Lincoln executed the Program Manager Agreement ("the agreement"), under which GGIS agreed to become a general agent for

---

[1]  In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to GGIS, the nonmoving party.  See infra Part II.

[2]  In GGIS' Amended Counterstatement of Undisputed Facts (Doc. 102), GGIS responds to paragraphs 1 through 23 of Lincoln's Statement of Undisputed Facts, but fails to respond to paragraphs 24 through 43.  Pursuant to Local Rule 56.1, the court will deem paragraphs 24 through 43 admitted.  See L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party").

Additionally, GGIS attempts to incorporate by reference its Statement of Undisputed Facts in Support of Their Motion for Summary Judgment filed September 15, 2010, in Case No. 1:10-CV-0932.  The Court will not consider the additional information as such an incorporation expressly violates Local Rule 7.8(a).  See L.R 7.8 ("No brief may incorporate by reference all or any portion of any other brief.").

Lincoln. (Doc. 85 ¶ 3; Doc. 85-1; Doc. 102 ¶ 3). Pursuant to the agreement, GGIS acted as Lincoln's fiduciary in managing insurance brokers selling Lincoln's insurance policies. (Doc. 85-1). The agreement required GGIS to repay previously advanced commissions if it did not meet certain loss targets. (Id. at 32-33). The agreement also required GGIS to establish an Escrow Account to secure prospective contingent commission amounts and deposit four percent of earned premiums into the account each month until the account reached $3,400,000. (Doc. 85 ¶¶ 34, 35; Doc. 85-1, at 37).

Article XIX of the agreement required that,

> any dispute between [Lincoln] and [GGIS] with reference to the interpretation, application, formation, enforcement or validity of this Agreement, or their rights with respect to any transaction involved, whether such dispute arises before or after the termination of this Agreement, such dispute, upon written request of either party, shall be submitted to the decision of a board of arbitration . . . .

(Doc. 85 ¶ 5; Doc. 102 ¶ 5). The agreement also contained a forum selection clause whereby Lincoln and GGIS agreed to the exclusive jurisdiction of York County Court of Common Pleas or the United States District Court for the Middle District of Pennsylvania. (Doc. 85 ¶ 14; Doc. 102 ¶ 14).

### B. The Arbitration Proceeding and Award

In May of 2007, Lincoln instigated an action against GGIS in the Los Angeles Superior Court for claims relating to the agreement. (Doc. 48, at 1). Lincoln voluntarily dismissed the action subsequent to the denial of its motion for preliminary injunction. (Id. at 1-2). On June 30, 2008, pursuant to Article XIX of

the agreement, Lincoln requested arbitration against GGIS. (Doc. 85 ¶ 6; Doc. 102 ¶ 6). Lincoln sought payment from GGIS for contingent commissions it alleged were past due and owing. (See Doc. 85-4). The arbitration commenced on March 1, 2010, with an evidentiary hearing in York, Pennsylvania. (Doc. 85 ¶ 10; Doc. 102 ¶ 10). GGIS did not participate in the arbitration arguing that the arbitration panel lacked jurisdiction over it. (Doc. 85 ¶ 11; Doc. 102 ¶ 11; see also Doc. 85-4, at 2-5). On March 30, 2010, the arbitration panel entered an award in favor of Lincoln in the amount of $1,952,515. (Doc. 85 ¶¶ 28, 29). The panel reaffirmed its jurisdiction over GGIS and found that the business produced by GGIS failed to meet the profitability requirements of the agreement and that GGIS failed to fund the escrow account to secure its obligation to pay future commissions. (Doc. 85 ¶¶ 28, 29; Doc. 85-4, at 2-5).[3]

On April 29, 2010, Lincoln and GGIS filed related actions to confirm and vacate the Arbitration Award. (Doc. 85 ¶¶ 20, 21; Doc. 102 ¶¶ 20, 21). GGIS filed its Petition to Vacate the Arbitration Award in this court. (Doc. 85 ¶ 20; Doc. 102 ¶ 20). Lincoln brought its petition to confirm the Arbitration Award in the York County

---

[3] The panel determined profitability using the Loss Ratio formula found in the agreement, which divided the Accident Year losses by Earned Net Premiums for the year. (Doc. 85 ¶¶ 30, 31). Accident Year losses were determined by results of the claims handling performed by Lincoln, influenced by the dollar amount of claims payments, reserves established to pay claims made by policyholders, and salvage and subrogation recoveries. (Id. ¶ 32). Earned Net Premiums were determined, pursuant to the agreement, by the amount of business produced by GGIS, measured by the premium charged on each original and new policy, less certain deductions. (Id. ¶ 33).

Court of Common Pleas, which GGIS then removed to this Court on May 5, 2010. (Doc. 85 ¶ 21; Doc. 102 ¶ 21). The court consolidated the petitions under docket number 1:10-CV-0932, (see Doc. 85 ¶ 22; Doc. 102 ¶ 22), and confirmed the Arbitration Award on February 25, 2011. (Doc. 85 ¶ 26).

### C.   Procedural History

On June 24, 2009, GGIS filed its complaint in the instant action (Doc. 1-2) in the Los Angeles Superior Court, alleging breach of contract, breach of implied covenant of good faith and fair dealing, statutory unfair competition, common law unfair competition, declaratory relief, promissory fraud, fraud and deceit, negligent misrepresentation, and negligent claims handling. (Doc. 85 ¶ 5; Doc. 102 ¶ 5). On February 10, 2010, Lincoln removed the case to the United States District Court for the Central District of California. (Doc. 85 ¶ 15; Doc. 102 ¶ 15). On May 3, 2010, the presiding judge, the Honorable Dale S. Fischer, ruled that all of the claims in the complaint were related to the agreement and granted Lincoln's Motion to Transfer Venue to the Middle District of Pennsylvania. (Doc. 85 ¶ 19; Doc. 102 ¶ 19; see also Doc. 48).

On August 2, 2011, Butler, Kingsway, and Lincoln filed motions for summary judgment on all counts. (Docs. 80, 83). GGIS filed briefs in opposition (Docs. 94, 95) on January 27, 2012. Butler and Kingsway filed their joint reply brief on February 9, 2012. (Doc. 103). On February 10, 2012, Lincoln filed its reply brief. (Doc. 104). The motions have been fully briefed and are ripe for disposition.

## II.  Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(a).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(a), (c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

## III.  Discussion

In this diversity action, GGIS asserts claims of breach of contract, breach of implied covenant of good faith and fair dealing, statutory unfair competition, common law unfair competition, promissory fraud, fraud and deceit, negligent misrepresentation, and negligent claims handling.  (See Doc. 1-2).  In addition GGIS seeks a declaration of the parties' rights and obligations under the agreement.  (Id.) Lincoln, Butler, and Kingsway argue that all claims are barred by the doctrine of res judicata.  GGIS counters that its claims are not barred by the doctrine of res judicata, that the arbitration award should be vacated because Lincoln waived its

right to force arbitration when it pursued legal action in the California courts in 2007, and the award should not be enforced because default awards are disfavored. The court will first address the res judicata issue, followed by the waiver and default award issues. Finally, the court will *sua sponte* consider the status of defendant Does 1 through 100.

### A.     Res Judicata

As an initial matter, this Court must consider whether federal or state rules of res judicata apply. The agreement between Lincoln and GGIS provides that "The rights of the parties to this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania without regard to Pennsylvania rules on conflict of laws." (Doc. 85-1, at 21).

The Third Circuit has yet to consider whether state or federal rules of claim preclusion apply where a federal court is exercising diversity jurisdiction to determine the preclusive effect of a prior federal judgment confirming an arbitration award. Lincoln argues that applying Pennsylvania rules of claim preclusion would be incompatible with federal interests, because federal courts have a strong interest in determining the preclusive effect of their judgments. GGIS notes the absence of Third Circuit precedent on the issue and applies the Second Restatement on Judgments § 83.[4]

---

[4] GGIS relies on § 83 of the Restatement, which concerns an adjudicative determination by an administrative tribunal, but fails to discuss § 84, which directly addresses the failure to bring counterclaims in an arbitration proceeding.

The Supreme Court has held that "[t]he preclusive effect of a federal-court judgment is determined by federal common law." Taylor v. Sturgell, 553 U.S. 880, 891 (2008) (citing Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 507-508 (2001)).  In diversity actions, the Third Circuit directs district courts to "apply the preclusion rules of the forum state, unless they are incompatible with federal interests." Houbigant, Inc. v. Fed. Ins. Co., 374 F.3d 192, 205 (3d Cir. 2004).

In addition, the Third Circuit applies federal preclusion rules to successive diversity cases. See Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 145 (3d Cir. 1999) (following majority of circuits by adopting federal preclusion rules).  Since this is a successive diversity case with strong federal interests, the court will apply federal preclusion rules. See id. (concluding that "respecting courts' power to determine the preclusive effects of their own rulings is a significant federal interest"); Kern v. Hettinger, 303 F.2d 333, 340 (2d Cir. 1962) ("One of the strongest policies a court can have is that of determining the scope of its own judgments.").

Under the doctrine of res judicata, also known as claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based upon the same cause of action." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979).  This dispositive effect applies to "a prior judgment if a particular issue, although not litigated, *could have been raised* in the earlier proceeding." Bd. of Tr. of Trucking Emp. Welfare Fund Inc. v. Centra, 938 F.2d 495, 504 (3d Cir. 1992) (emphasis added).

There is no dispute that there is a judgment on the merits in a prior suit and that the parties involved are the same or their privies.[5] The remaining issues are whether GGIS's Complaint is based upon the same cause of action as that in the arbitration proceeding and whether the claims in the instant matter should have been brought in the arbitration proceeding. The court will address the issues *in seriatum*.

1. **GGIS's Claims Are Based Upon the Same Cause of Action as the Arbitration**

For a party to succeed on a defense of claim preclusion, it must be shown that there is a subsequent suit based on the same cause of action. Elkadrawy v. Vanguard Group, Inc., 584 F.3d 169, 172-73 (3d Cir. 2009). The question herein is

---

[5] GGIS notes in its opposition brief to Lincoln's motion for summary judgment that Butler and Kingsway filed a motion for summary judgment on the basis of res judicata "even though there is no privity of contract with these non-parties." (Doc. 94, at 2). GGIS, however, does not discuss privity in its opposition brief to Butler and Kingsway's motion for summary judgment. (See Doc. 95).

Butler and Kingsway assert that there is a close, significant relationship with Lincoln that warrants invoking res judicata against GGIS. (Doc. 82, at 15). Courts typically find that privity exists where: (1) the nonparty has succeeded to, or shares a concurrent right to the party's interest in, property, (2) the nonparty controlled the prior litigation, and (3) the party adequately represented the nonparties' interests in the prior proceeding. First Options v. Kaplan, 913 F. Supp. 377, 383 (E.D. Pa. 1996) (citing Latham v. Wells Fargo Bank, N.A., 896 F.2d 979, 983 (5th Cir. 1990).

Butler asserts that he was Vice President of Lincoln at all relevant times and, as a corporate officer, was an agent of the corporation. (Doc. 82, at 11). Kingsway argues that it had a close relationship with Lincoln as well. Lincoln was an indirect wholly-owned subsidiary of Kingsway at the times relevant to the present litigation. (Doc. 82, at 11-12). To the extent GGIS has not waived the argument by failing to raise it in opposition to Butler and Kingsway's motion, the court finds that Butler and Kingsway are privies with respect to the arbitration judgment.

9

whether the claims brought by GGIS *sub judice* constitute the same cause of action as that litigated to conclusion in the arbitration proceeding.

To determine whether two matters involve the same cause of action, the court "look[s] toward the 'essential similarity of the underlying events giving rise to the various legal claims.'" Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991) (citing Davis v. United States Steel Supply, 688 F.2d 166, 171 (3d Cir. 1982)). Important factors include whether both matters involve the same acts, material facts, witnesses, and documentation.  Id. (citing United States v. Athlone Indus., Inc. 746 F.2d 977, 984 (3d Cir. 1984)).  Determining whether two matters involve the same cause of action should be done pragmatically, considering "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Phillips/May Corp. v. United States, 524 F.3d 1264 (Fed. Cir. 2008) (citing RESTATEMENT (SECOND) JUDGMENTS § 24(2) (1982)).  "A single cause of action may comprise claims under a number of different statutory and common law grounds.  Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the essential similarity of the underlying *events giving rise to the various legal claims*." Davis v. United States Steel Supply, 688 F.2d 166, 171 (3d Cir. 1982) (emphasis added) (internal citations omitted).

In the arbitration proceeding, Lincoln sought payment for overdue provisional commissions that the agreement required to be returned to Lincoln and

an additional sum which Lincoln alleged GGIS was required to place in an escrow account pursuant to the agreement. (Doc. 85 ¶ 28). The arbitrators determined that GGIS did not meet the requirements of the agreement and entered judgment in favor of Lincoln. (Id. ¶ 29).

The Complaint presently before the Court consists of nine counts brought against Defendants. The first count alleges that defendants breached the agreement, resulting in damages. (Doc. 1-2 ¶¶ 27-30). This count is broad and does not detail any specific acts of the breach. Plaintiff's second count alleges that Defendants breached the implied covenant of good faith and fair dealing under the agreement. (Id. ¶¶ 31-34). GGIS's next claim alleges that Defendants violated California Business and Professions Code § 17200 "by suspending Plaintiffs' right to bing private passenger automobile insurance, by declaring Plaintiffs to be in breach of the Agreement without setting forth the basis of the alleged material breach, by adopting claims handling practices to impact the loss ratio . . . ." (Id. ¶ 36). In addition to the statutory unfair competition claim, GGIS brings a common law unfair competition claim in count four. (Id. ¶¶ 40-49). GGIS's fifth cause of action requests a declaration of the rights and duties of both GGIS and Lincoln under the agreement. (Id. ¶¶ 50-52).

GGIS alleges promissory fraud in count six, asserting that prior to rendering its performance of its duties to the contract, Defendants promised to perform their duties under the contract but had no intention of fulfilling this promise. (Id. ¶¶ 54,

55). The seventh count alleges that Defendants committed fraud and deceit by making misrepresentations to GGIS regarding the benefits GGIS would receive under the agreement in order to induce GGIS to do business with Lincoln. (Id. ¶¶ 60-65). The final two counts allege negligent misrepresentation and negligent claims handling. (Id. ¶¶ 66-76).

GGIS argues that these claims present facts that occurred at a different time from those in the arbitration proceeding, and that the claims do not arise out of the agreement. As an initial matter, the court notes Judge Fischer's observation in transferring venue to this court that "[g]iven Plaintiff's own complaint incorporates the Agreement into each of its causes of action, by its own admission all of the claims relate to it." (Doc. 48, at 4). Additionally, a close examination of the counts reveals that they arise out of the agreement and are related in origin, motivation, time, and facts to the claims brought in the arbitration proceeding.

The arbitration proceeding determined whether GGIS was required to return provisional commissions and pay overdue provisional commissions. (Doc. 85 ¶ 28). The amount owed to Lincoln was determined by the arbitration panel pursuant to the terms of the agreement by using the Loss Ratio formula. The arbitration proceeding and award also resolved whether GGIS had met its obligation under the agreement to fund the Escrow Account. (Id. ¶ 36).

Lincoln's complaint in the arbitration alleged breach of contract, therefore, the first two counts, breach of contract and breach of implied covenant of good faith

and fair dealing are related in origin, motivation, time, and facts to the arbitration proceeding. See Phillips/May Corp. v. United States, 524 F.3d 1264, 1272 (Fed. Cir. 2008) (recognizing presumption that "claims arising out of the same contract constitute the same claim for res judicata purposes" but also noting exceptions thereto).

The statutory and unfair competition claims brought by GGIS allege that Defendants "adopted[ed] claims handling practices to impact the loss ratio in a manner to minimize Plaintiffs' right to obtain commissions under the Agreement." (Doc. 1-2 ¶¶ 36, 40, 42). The arbitration proceeding determined the loss ratio and its components. (See Doc. 85-4).

In its request for declaratory relief, GGIS seeks "a judicial determination of their rights, and a declaration of the rights and duties of the respective parties under the Agreement." (Doc. 1-2 ¶ 52). In the arbitration, Lincoln sought a determination of its rights under the agreement and duties following the breach by GGIS. (See Doc. 85-4).

In its promissory fraud claim, fraud and deceit, and negligent misrepresentation claim, GGIS alleges that Defendants falsely promised to perform their obligations under the agreement to the detriment of GGIS and that Defendants made material misrepresentations regarding the agreement. These claims deal directly with the agreement. GGIS's final claim alleges that Defendants negligently handled insurance claims. The arbitration proceeding considered the

handling of claims in its calculation of the Accident Year Losses as part of the Loss Ratio formula.

All claims stem from the agreement and relate in origin, time, motivation, and facts to the arbitration proceeding. Therefore, all claims involve the same cause of action as the arbitration.

### 2. **GGIS's Claims Should Have Been Brought in Arbitration**

Procedurally, GGIS could have brought its claims in the prior arbitration. Article XIX of the agreement requires

> any dispute between [Lincoln] and [GGIS] with reference to the *interpretation, application, formation, enforcement or validity* of this Agreement, or their rights with respect to any transaction involved, whether such dispute arises before or after the termination of this Agreement, such dispute, upon written request of either party, shall be submitted to the decision of a board of arbitration . . . .

(Doc. 85-1, at 20 (emphasis added)). All of GGIS's claims relate to the interpretation, application, formation, enforcement, or validity of the agreement.

GGIS argues that it could not bring a counterclaim in the arbitration without waiving its objection to the jurisdiction of the arbitration panel. GGIS asserts that Rule 12(b) of the Federal Rules of Civil Procedure does not permit a defendant to bring a counterclaim at the same time as asserting a jurisdictional defense without waiving the jurisdictional defense. In arbitration proceedings, however, the bringing of a counterclaim does not waive a jurisdictional defense. See Kaplan v. First Options, 19 F.3d 1503, 1512 (3d Cir. 1994) ("A jurisdictional objection, once

stated, remains preserved for judicial review absent a clear and unequivocal waiver.") aff'd by First Options v. Kaplan, 514 U.S. 938 (1995).  In Kaplan, the Third Circuit held that a counterclaim brought by a defendant that objected to the jurisdiction of the arbitration panel was "not a clear or manifest expression of his 'willingness to forego judicial review.'"  Id. (citing Pennsylvania Power Co. v. Local Union 272 of the Int'l Bhd. of Elec. Workers, 886 F.2d 46, 50 (3d Cir. 1989)).

Additionally, GGIS *should have* brought its claims in the arbitration.  By bringing its claims now, in a separate action, success on any of GGIS's claims would affect the arbitration award.  The Restatement (Second) of Judgments § 22(2)(b) (1982), is instructive on this issue and reads in pertinent part:

> (2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of the judgment in that action, from maintaining an action on the claim if:
>> . . .
>> (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

See Smith v. Denver Food Sys., Inc., No. Civ. A. 94-0045, 1994 WL 551561, at *3 (E.D. Pa Oct. 5, 1994) (adopting this section of the Restatement); Rudell v. Comprehensive Accounting Corp., 802 F.2d 926, 928 (7th Cir. 1986).  The arbitrators calculated the Loss Ratio and determined deficiencies in GGIS's funding of the Escrow Account.  If GGIS is successful on any of its claims, the arbitrator's

calculation of the Loss Ratio and the deficiencies in the Escrow Account would be altered or nullified. (See Doc. 85 ¶¶ 37-43).

The court therefore concludes that GGIS's claims should have been brought in the arbitration proceeding and, as a result, are now barred by the doctrine of res judicata.[6]

### B.   Lincoln Did Not Waive Its Right to Enforce Arbitration Award

In an attempt to defeat summary judgment, GGIS also argues that the arbitration award should be vacated because Lincoln waived its right to enforce the award when it pursued legal action in the California courts prior to seeking arbitration. This Court previously rejected GGIS's waiver argument when it affirmed the arbitration award. See Civ. A. No. 1:10-CV-0932 (Doc. 31, at 22-24; Doc. 33). The agreement itself provides that

> The failure of the Company or Manager to insist on strict compliance with this Agreement, or to exercise any right or remedy shall not constitute a waiver of any rights provided under this Agreement, or stop the parties from thereafter demanding full and complete compliance or prevent the parties from exercising such a remedy in the future.

---

[6] In addition to asserting res judicata as a bar to GGIS's claims, Butler and Kingsway argue that GGIS' contract claims are meritless because they are not parties to the agreement, the fraud and negligence claims are barred by the statute of limitations, the fraud claims fail to meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b), and the negligence claims are barred by the economic loss doctrine. The court need not consider these arguments due to the court's conclusion that all of GGIS's claims are barred by the doctrine of res judicata.

(Doc. 85-1, at 21). Moreover, the court notes, once again, that questions of procedural arbitrability, including "allegation[s] of waiver, delay, or a like defense to arbitrability," are presumptively left to the arbitrator. Ross Dev. Co. v. Advanced Bldg. Dev., Inc., 803 A.2d 194, 196-97 (Pa. Super. Ct. 2002). GGIS's waiver argument should have been presented during arbitration.

### C. Default Judgments Can Support a Claim of Res Judicata

GGIS' final argument is that default awards are disfavored and should not be enforced if the defaulting party is able to show good cause. Here, the arbitration award was entered after GGIS refused to participate. GGIS argues that its jurisdictional objection and financial constraints constitute good cause. Lincoln counters that the arbitration award was not a default judgment, because the agreement did not provide for default awards, and the arbitrators entered the award on the merits.

The arbitration award was not a default award. Despite GGIS's lack of participation, the arbitration panel made findings of fact on the issues in dispute and reached legal conclusions based upon the evidence and citing case-law in support. (See Doc. 85-4, at 5-13). Assuming, *arguendo*, however, that the arbitration award was a default judgment, "[u]nlike collateral estoppel, a default judgment can support a claim of res judicata." Wilson v. Reliance Ins. Co., 138 Fed. App'x. 457, 459 (3d Cir. 2005) (citing Morris v. Jones, 329 U.S. 545, 550-51 (1947)). As stated

17

above, GGIS would not have waived its jurisdictional argument by participating in arbitration, therefore its jurisdictional argument does not constitute good cause.

### D. Does 1 through 100

In addition to naming Lincoln, Butler and Kingsway as defendants in the instant matter, GGIS names Does 1 through 100 as defendants in its complaint. (See Doc. 1-2). The burden rests with GGIS to identify and serve these anonymous or fictitious defendants.[7] See Lynch v. Hunter, No. Civ. A. 00-CV-1331, 2000 WL 1793396 (E.D. Pa. Nov. 22, 2000); see also Figueroa v. Rivera, 147 F.3d 77, 82-83 (1st Cir. 1998). To date, GGIS has not sought leave to amend the caption to identify Does 1 through 100. Under the Federal Rules of Civil Procedure, if a service of summons and complaint is not made upon a defendant within 120 days of filing of the complaint, the court may dismiss the complaint as to that defendant. See FED. R. CIV. P. 4(m); see also Figueroa, 147 F.3d at 83. The complaint in this matter was filed on June 24, 2009, well over 120 days ago.

---

[7] The caption of GGIS's complaint identifies Does 1 through 100 as defendants, but the complaint itself only refers to Does 1 through 50, and states:
>  The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants Does 1 through 50 inclusive are unknown to Plaintiffs who therefore sue said defendants by such fictitious names and will ask leave of this court to identify their true names and capacities when they have been ascertained. Plaintiffs are informed and believe, and thereupon allege, that each of said Defendants is negligently, or in some other actionable manner, legally responsible for proximately and legally causing the events, happenings and occurrences referred to herein, and in Plaintiffs' Complaint.

(Doc. 1-2 ¶ 2).

"Moreover, a district court otherwise prepared to act on dispositive motions is not obligated to 'wait indefinitely for [the plaintiff] to take steps to identify and serve . . . unknown defendants'" Figueroa, 147 F.3d at 83 (quoting Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980)).  Rather, "[f]ictious names must eventually be dismissed, if discovery yields no identities." Atlantic Used Auto Parts v. City of Philadelphia, 957 F. Supp. 622, 625 (E.D. Pa. 1997) (internal citation and quotation omitted).  Discovery in this matter closed, July 15, 2011, more than eight months ago.  (See Doc. 77).  The court will therefore exercise its discretion and dismiss Does 1-100 from this action.  See Figueroa, 147 F.3d at 82-83 (affirming dismissal of Doe defendants where plaintiff failed to identify Doe defendants in the 17 months that elapsed between filing of the complaint and the district court's entry of judgment).

## IV.    Conclusion

For the above-stated reasons, the court will grant Lincoln's, and Kingsway and Butler's motions for summary judgment on all counts and dismiss Does 1-100. An appropriate order follows.

      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge

Dated:        April 9, 2012

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GGIS INSURANCE SERVICES, INC.** : **d/b/a GUARDIAN GENERAL** : **INSURANCE SERVICES,** :          **Plaintiff** : : **v.** : : **LINCOLN GENERAL INSURANCE** : **COMPANY, SCOTT BUTLER,** : **KINGSWAY FINANCIAL SERVICES,** : **INC., and DOES 1-100,** : :          **Defendants** : | **CIVIL ACTION NO. 1:10-CV-1000** **(Judge Conner)** |

## **ORDER**

AND NOW, this 9th day of April, 2012, upon consideration of the motions for summary judgment (Docs. 80, 83), filed by Lincoln General Insurance Company, Scott Butler, and Kingsway Financial Services, Inc., and upon further consideration of Does 1 through 100, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motions for summary judgment (Docs. 80, 83) are GRANTED.

2. Does 1 through 100 are DISMISSED.

3. The Clerk of Court is directed to enter JUDGMENT in favor of Lincoln, Butler, and Kingsway on all counts.

4. The Clerk of Court is directed to CLOSE the case.

                                                                 S/ Christopher C. Conner
                                                                CHRISTOPHER C. CONNER
                                                                 United States District Judge